JUSTICE TIMPONE delivered the opinion of the Court.
**437 To be lawful, an automobile stop must be predicated on "specific and articulable facts giving rise to reasonable suspicion that defendant had committed motor vehicle violations." State v. Robinson, 228 N.J. 529, 548, 159 A.3d 373 (2017). In a suppression motion hearing challenging a moving stop, "[t]he State has the **438 burden of proof to demonstrate by a preponderance of the evidence that the warrantless seizure was valid." State v. O'Neal, 190 N.J. 601, 611, 921 A.2d 1079 (2007).
By contrast, a defendant bears the burden of proof when challenging evidence gathered pursuant to a validly issued search warrant. See, e.g., State v. Bivins, 226 N.J. 1, 11, 140 A.3d 524 (2016) ("[W]hen a search is based on a warrant, the search is presumptively valid. When contesting the search at a suppression hearing, the defendant must prove that the warrant was based on insufficient probable cause to justify its issuance or that the execution of the search was unreasonable." (citation omitted) ).
In this appeal, the Court considers whether a search warrant granted after police performed an investigatory automobile stop can retroactively validate the stop and insulate the State from bearing, in a suppression hearing, the burden of demonstrating reasonable and articulable suspicion for the initial seizure of the moving vehicle.
Here, the State proffers the theory that by including in a later-developed search warrant affidavit for defendants' automobile the facts that led police to perform a warrantless automobile stop of defendants' moving vehicle, the judge's grant of the search warrant rendered the preceding automobile stop constitutional. Thus, the State argues, defendant must carry the burden of proof on the challenge to the investigatory stop in this case because the *1122 stop was subsumed into, and approved by, the search warrant.
We reject that theory. Search warrants are prospective in nature-they authorize the taking of action. A later-obtained search warrant does not retroactively validate preceding warrantless conduct that is challenged through a suppression motion focused on the legitimacy of the seizure that gave rise to a later search. The State must bear the burden of proving the legitimacy of the seizure that led to a later warrant and search-in this case the stop. Because the State did not carry its burden as to the stop, **439 we affirm the suppression of the evidence seized in the course of the subsequent search as fruit of the poisonous tree.
I.
On June 12, 2015, at 10:08 p.m., the Lakewood Police Department (LPD) received a call from Hatzolah of Lakewood, a volunteer first aid organization, regarding a disturbance on Ford Avenue in Lakewood, New Jersey. The caller did not provide specific details, but officers were dispatched to check the area for any suspicious activity.
Sergeants Pederson and Miick of the LPD responded to the area and conducted a motor vehicle stop of an automobile driven by defendant Aharon Atwood, in which co-defendant Shalom Mizrahi was a passenger. According to the search warrant affidavit, Sergeant Miick observed Atwood's vehicle travel south on Cornell Street as it "pulled over to the side of the road with a front driver's side head light out," then witnessed "the vehicle quickly leave the area as the marked unit was observed."
Defendants disputed the basis for the stop, asserting that both headlights were operational and denying any evasive behavior. The Mobile Video Recording (MVR), according to defendants, indicates that Atwood did not commit any motor vehicle violation.
After Sergeant Miick activated the overhead lights, Atwood immediately pulled the vehicle to the side of the road. Both officers approached the vehicle and questioned defendants about the disturbance on Ford Avenue. Mizrahi explained that he had been the victim of a robbery. The officers then questioned defendants about an apparent marijuana odor emanating from the vehicle. While questioning defendants, Sergeant Miick reportedly detected traces of marijuana, in plain view, on the driver's side floor. The officers requested an Ocean County Sheriff's K-9 narcotics dog to respond to the scene and removed defendants from the vehicle. The K-9 gave a "positive hit" on the vehicle's trunk. Police impounded the vehicle and placed both defendants under arrest.
**440 Later that evening, Officer Nathan Reyes of the LPD obtained a search warrant for the vehicle. A judge issued the warrant at approximately 3:00 a.m. on June 13, 2015. Police executed the warrant soon thereafter, uncovering marijuana and cocaine in the rear interior passenger area of the car.
On August 26, 2015, an Ocean County Grand Jury handed up an indictment charging each defendant with one count of fourth-degree possession of a controlled dangerous substance (CDS) (marijuana), N.J.S.A. 2C:35-10(a)(3) ; one count of second-degree possession with intent to distribute (marijuana), N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35-5(b)(10)(b) ; one count of third-degree possession of a controlled dangerous substance (cocaine), N.J.S.A. 2C:35-10(a)(1) ; and one count of second-degree possession with intent to distribute (cocaine), N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35-5(b)(2).
*1123 On September 22, 2015, defendants filed a motion to suppress evidence seized "without a warrant." In response, the State challenged that framing of the issue and relied on the search warrant to validate the initial stop. The court agreed that defendants had "mischaracterized" the motion and amended the briefing schedule to require the defense to bear the burden as to the entire suppression motion.
Defendants objected to the amended scheduling order. They noted that the initial motor vehicle stop was executed without a warrant and argued that the State should accordingly bear the burden to establish the validity of that particular warrantless seizure activity.
The trial court held a conference with defense counsel and the State. The parties engaged in substantial argument regarding the manner in which the motion should proceed and which party would have the burden at each phase. The court noted the existence of "warrantless aspects" to the suppression motion. Based on the conference, the trial court issued an updated scheduling order and directed the State to establish the legality of the "warrantless aspects" of the motion-namely, the initial motor **441 vehicle stop. Defendants would bear the burden on any challenges to the validity of the subsequent search warrant.
The State responded in writing: "In compliance with the Court's order, the State intends to call witnesses with respect to the initial detention, seizure and search of defendant Atwood." As directed, defendants filed an opposition brief and a motion to suppress evidence seized "with a warrant," or alternatively for a hearing pursuant to Franks v. Delaware, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). Defendants sought the Franks hearing to "inquire further into the veracity of the affidavit" underlying the search warrant. See State v. Howery, 80 N.J. 563, 566, 404 A.2d 632 (1979) (discussing Franks hearing).
On the day of the suppression hearing, instead of presenting proofs to establish the legality of the stop, the State again requested that the court shift the entire burden to the defense. The State argued it should not be required to proceed with the initial burden because the police ultimately obtained a search warrant.
The trial court denied the State's request and denied the State's subsequent application for an adjournment to seek leave to file an interlocutory appeal. Because the motion had been in the pipeline for a year and the State sought to reopen an already-decided procedural dispute, the trial court ordered the proceeding to begin with the State having the initial burden of proof. The State then requested, and was granted, a short recess to obtain assistance in setting up the equipment to play the MVR.
Upon resuming, the State announced that it would not go forward with evidential proceedings. Instead of returning with an individual to assist in setting up the equipment for the MVR, the State waged another effort at challenging which party should carry the initial evidentiary burden and proposed orders ascribing the burden to the defense. The court admonished the State and ordered that it begin with the presentation of testimony. The State called no witnesses.
**442 Finding that the State had failed to meet its burden, the court granted defendants' motion to suppress. The court suppressed all evidence seized-including the evidence seized pursuant to the search warrant under the "fruit of the poisonous tree" doctrine.
The court denied the State's request for leave to file an interlocutory appeal. The State filed a motion for leave to appeal to *1124 the Appellate Division, which promptly denied that motion. We granted the State leave to appeal. 229 N.J. 255, 161 A.3d 763 (2017).
II.
A.
The State asks this Court to reverse the decision of the trial court imposing the initial burden of proof on the State to prove that the motor vehicle stop was justified. The State points to precedent demonstrating that searches conducted pursuant to a warrant are presumptively valid. The police obtained the CDS here via a warrant, the State contends, and so the State should not be required to "re-justify" a search already justified when the warrant application was made and approved. According to the State, because the initial traffic stop was referenced within the four corners of the warrant affidavit, defendants' challenge to the stop must be viewed as a challenge to the warrant.
It is from that perspective that the State asserts suppression motions cannot become "hybrid" motions with multiple burdens of proof. The State indicates that Rule 3:5-7 identifies two distinct burdens depending on whether there was a search warrant. The State contends that because no search occurred until after the police executed a warrant, the search fell on the "warrant side" of the warrant-no warrant dichotomy.
The State additionally contends that the trial court erred in granting defendants an evidentiary hearing on the motion to suppress because defendants failed to carry their burden under Franks v. Delaware.
**443 The State finally argues that even if this Court were to find that the motor vehicle stop was "warrantless" for procedural purposes, the State met its burden of proof. The State points to the warrant affidavit as showing-on its own and by a preponderance of the evidence-that the police acted with reasonable and articulable suspicion.
B.
Defendant Atwood argues that the trial court properly placed the burden of proof on the State to justify the motor vehicle stop. Atwood notes that a later-obtained search warrant cannot negate the illegality of any police conduct that may have preceded it. Central to defendant's argument is that the State presented no evidence and elicited no testimony at the suppression hearing to justify the motor vehicle stop. Thus, defendant claims, the trial court correctly suppressed all later-obtained evidence under the "fruit of the poisonous tree" doctrine.
Defendant Atwood contends that a Franks hearing would have been inappropriate in this case because he did not primarily challenge the legality of the search warrant but rather the allegedly unreasonable traffic stop that preceded the warrant. Defendant emphasizes that New Jersey courts routinely grant evidentiary hearings to permit defendants to challenge conduct that precedes search warrants.
Defendant Mizrahi echoes Atwood's arguments that the motor vehicle stop was clearly a warrantless event requiring a testimonial hearing. Mizrahi contends that he had a right to question the facts that led to the search warrant and that such a disagreement triggers a testimonial hearing under Rule 3:5-7(c). Mizrahi claims the MVR refutes the officers' contention that the impetus for the traffic stop was an inoperable headlight. According to Mizrahi, limiting the inquiry to the "four corners of the warrant" would strip the court of its ability to review any search or seizure *1125 that occurred before police received a search warrant. **444 Mizrahi distinguishes the review of a warrantless seizure from a warrant-based probable cause determination. He asserts the mere fact that the judge who issued the search warrant acknowledged the officer's version of the stop and found probable cause to search does not conclusively validate the constitutionality of the underlying seizure. The stop requires independent justification, Mizrahi argues.
Mizrahi highlights the State's failure to abide by the trial court's order to call witnesses and to produce any evidence at the hearing. Any prejudice that befell the State is a result of its contempt for the court's instructions, which Mizrahi stresses as another reason not to disturb the trial court's decision to grant defendants' motion to suppress.
III.
A.
Motor vehicle stops are seizures for Fourth Amendment purposes. See State v. Sloane, 193 N.J. 423, 430, 939 A.2d 796 (2008). An officer may stop a motor vehicle only upon "articulable and reasonable suspicion" that a criminal or motor vehicle violation has occurred. Delaware v. Prouse, 440 U.S. 648, 663, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979) ; State v. Scriven, 226 N.J. 20, 33-34, 140 A.3d 535 (2016) ("Under both the Fourth Amendment [of the United States Constitution] and Article I, Paragraph 7 [of the New Jersey Constitution], ordinarily, a police officer must have a reasonable and articulable suspicion that the driver of a vehicle, or its occupants, is committing a motor-vehicle violation or a criminal or disorderly persons offense to justify a stop."); State v. Locurto, 157 N.J. 463, 470, 724 A.2d 234 (1999). The State bears the burden of proving that an investigatory stop is valid. State v. Maryland, 167 N.J. 471, 489, 771 A.2d 1220 (2001).
Before trial, a defendant claiming to be aggrieved by an unreasonable search or seizure may apply to suppress the evidence seized, whether the search or seizure was executed with a warrant **445 or constitutes a warrantless search. R. 3:5-7(a). Subsection (b) of that rule allocates the evidentiary burden as to searches based on whether they are or are not supported by a warrant, and subsection (c) prescribes that "[i]f material facts are disputed [in suppression motions], testimony thereon shall be taken in open court." R. 3:5-7(c). Rule"3:5-7 ... contemplate[s] pre-trial hearings on Fourth Amendment issues which are collateral to guilt or innocence. In addition, evidence relating to the propriety of a stop or seizure is generally separate from issues of guilt or innocence. Usually, judicial economy is best served by resolving these issues pre-trial." State v. McLendon, 331 N.J. Super. 104, 109, 751 A.2d 148 (App. Div. 2000).
The proper mechanism through which to explore the constitutionality of warrantless police conduct is an evidentiary hearing. See N.J.R.E. 104 ; see also, e.g., State v. Gamble, 218 N.J. 412, 419, 95 A.3d 188 (2014) (noting that Court derived facts of case from "evidentiary hearing held in response to defendant's motion to suppress" evidence seized after investigatory stop).
At evidentiary hearings, the State presents witnesses to substantiate its basis for the challenged warrantless conduct, and the defense is afforded the opportunity to confront and cross-examine the State's witnesses. "The hearing must be conducted in the presence of counsel and defendant, and the defendant can only be excluded from the hearing for extraordinary reasons that must be articulated on *1126 the record." State v. Byrd, 198 N.J. 319, 351, 967 A.2d 285 (2009). N.J.R.E. 104 hearings provide an opportunity to probe adverse evidence through cross-examination. See Sutter v. Horizon Blue Cross Blue Shield of N.J., 406 N.J. Super. 86, 98, 966 A.2d 508 (App. Div. 2009). Indeed, our courts have recognized the importance of the ability to question witnesses in case of factual disputes. See State v. Green, 346 N.J. Super. 87, 101-02, 787 A.2d 186 (App. Div. 2001).
B.
Here, there was clearly a dispute as to material facts. According to the warrant affidavit, the initial seizure of defendants'
**446 moving vehicle-the investigatory stop-was premised on the officers' observation of defendants' non-functioning headlight. Defendants challenged that assessment on the ground that the MVR did not corroborate the assertion that a headlight was not functional. That factual dispute directly related to the question whether defendants were in compliance with the traffic code. See State v. Carty, 170 N.J. 632, 639-40, 790 A.2d 903 (2002) ("A lawful stop of an automobile must be based on reasonable and articulable suspicion that an offense, including a minor traffic offense, has been or is being committed."). The trial court properly directed that an evidentiary hearing be held in order for the State to satisfy its burden of proving that reasonable and articulable suspicion supported the warrantless seizure of defendants' moving vehicle.
At the hearing, the State chose not to present any witnesses to justify the investigatory stop that preceded the application for a search warrant. Instead, it held fast to the novel view that the judge who granted the warrant had blessed the pre-warrant conduct. But because the warrantless conduct of seizing defendants' car was "presumptively unreasonable and therefore invalid," State v. Elders, 192 N.J. 224, 246, 927 A.2d 1250 (2007), the burden remained on the State to establish "by a preponderance of the evidence that there was no constitutional violation," State v. Wilson, 178 N.J. 7, 13, 833 A.2d 1087 (2003). The State had to prove the reasonable and articulable suspicion to justify the initial stop.
The statements in the warrant affidavit were not enough to carry that evidentiary burden. As envisioned in Green, defendants were entitled to cross-examine the officers who made those statements to test, among other things, the officers' vision and perspective in observing the perceived traffic violation, as well as whether the MVR conflicts with the officers' account. The warrant affidavit is not a substitute for the officers' testimony and therefore did not suffice to justify the stop.
**447 On a motion to suppress evidence for which a warrant was obtained, the trial court's review is limited to "the information contained within the four corners of the supporting affidavit, as supplemented by sworn testimony before the issuing judge that is recorded contemporaneously." Wilson, 178 N.J. at 14, 833 A.2d 1087 (quoting Schneider v. Simonini, 163 N.J. 336, 363, 749 A.2d 336 (2000) ). The four-corners rule "assures that the magistrate was in a position to adequately perform the constitutional function of providing independent judicial review prior to executive intrusions on individual privacy." Ibid. (emphasis added) (quoting Kevin G. Byrnes, New Jersey Arrest, Search and Seizure § 5:2-5, at 74 (2003) ).
The State seeks to amend the four-corners rule to include a finding that when a warrant is present, it retroactively validates prior warrantless conduct. It does not. The State oversimplifies and undermines *1127 basic burdens of proof in the warrant-no warrant dichotomy. Here, the State asserts that when a warrant application recites a factual basis that includes actions taken without a warrant, the judge's issuance of the search warrant not only permits the search that follows but also cleanses all previous warrantless activities. By virtue of that purported cleansing, the State contends, defendants must carry the burden of proof if they seek to challenge any of the pre-warrant seizure conduct referenced in the affidavit in support of the warrant application just as they would carry the evidentiary burden in challenging the search authorized by the warrant.
Here, the State properly identified the history leading up to the request for a search warrant in its affidavit. Context is important and helpful to the examining judge. Moreover, in a challenge to the validity of a search warrant, reviewing courts consider significant omissions from affidavits in assessing whether the warrant was supported by probable cause. See United States v. Davis, 430 F.3d 345, 358 (6th Cir. 2005) (noting that omission of "the fact that the first drug-sniffing dog failed to alert to the presence of narcotics in the vehicle" was "a material fact omitted **448 from the affidavit by the affiant"). It is therefore proper that the circumstances of the stop were fully set forth in the affidavit.
That does not mean, however, that the grant of a forward-looking warrant can validate actions already taken. The flaw in the State's "four corners" argument centers on the failure to account for pre-warrant seizure conduct. If a defendant challenges a motor vehicle stop, the burden is on the State to demonstrate its validity based on reasonable and articulable suspicion. In the motor vehicle context, that is a relatively low burden. We have held that whereas "a mere 'hunch' does not create reasonable suspicion, the level of suspicion required is 'considerably less than proof of wrongdoing by a preponderance of the evidence,' and 'obviously less' than is necessary for probable cause." Gamble, 218 N.J. at 428, 95 A.3d 188 (quoting Terry v. Ohio, 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) ; then quoting United States v. Sokolow, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989) ).
Although the bar is low, it is a bar nonetheless, and the State must provide evidence to support the reasonableness of the suspicion that led to the stop that can be tested through the adversarial process. That process would be defeated if the grant of a warrant could retroactively sanction a warrantless seizure. The trial court here afforded to the State ample opportunity to support the stop and scheduled a motion hearing for the determination of reasonable suspicion, but the State opted instead to re-argue an already-decided procedural question, thereby failing to meet even the reasonable suspicion standard. Because the State presented no other evidence, we affirm the determination that the State did not carry its burden to prove the validity of the stop.
C.
Having found that the stop at issue was unlawful in light of the State's failure to demonstrate reasonable suspicion, we consider whether the evidence was properly suppressed.
In State v. Holland, we explained that
**449 [a]s a general rule, evidence directly seized in violation of the warrant requirement is suppressed at trial. Sometimes the police obtain evidence not as a primary result of warrantless conduct, but as a consequence of it. During an illegal search, for example, the police *1128 might acquire information that leads to other evidence useful to prosecutors. Under that circumstance, the later-derived evidence might be suppressed or excluded as "fruit of the poisonous tree."
[ 176 N.J. 344, 353, 823 A.2d 38 (2003) (internal citations omitted).]
And in State v. Bryant, we specified that "evidence that is seized in a search incident to the original unlawful search is ... excluded under the fruit of the poisonous tree doctrine" to ensure that the deterrent aim of the exclusionary rule is realized. 227 N.J. 60, 71, 148 A.3d 398 (2016).
Here, there is no evidence that defendants' car would have been searched if not for the unsupported stop. Without the stop, the officers would not have smelled marijuana, would not have called for a canine sniff, and would not have sought a warrant. The search was unquestionably incident to the stop, and the evidence obtained through the search was thus subject to suppression.
D.
A search warrant cannot serve as a rubberstamp to justify the police's pre-warrant conduct. The legality of that conduct rises or falls based on the State's ability to provide independent justification for the pre-warrant seizure that led to the search. Here, that pre-warrant conduct was the investigatory stop.
By sitting on its hands at the evidentiary hearing and refusing to produce witnesses or evidence, the State left the trial judge no option but to suppress the evidence. The State sacrificed its case to an unproven and unsupported search warrant theory in the vain hope of having better positioning on burden of proof grounds. The State's refusal to present any evidence at the motion hearing amounted to a failure to carry its burden as to the stop. The search warrant here would not have been obtained but for the motor vehicle stop, and the trial court properly granted defendants' motion to suppress.
**450 IV.
The order of the trial court, granting defendants' motion to suppress, is affirmed.
CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, FERNANDEZ-VINA, and SOLOMON join in JUSTICE TIMPONE's opinion.